IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| CHALONDA JASPER, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br>v.<br><br>ABBOTT LABORATORIES, INC.<br><br>                      Defendant. | Case No. 11 C 229<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chalonda L. Jasper ("Jasper") brought a class action suit on behalf of herself and others similarly situated against Abbott Laboratories, Inc. ("Abbott"). Jasper alleges six counts relating to the contamination of Abbott's Similac infant formula, including intentional and negligent misrepresentation; a violation of the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5 ("DCSA"); breaches of express and implied warranties; and unjust enrichment. Abbott moves to dismiss Jasper's Complaint. For the following reasons, the Court grants Abbott's motion and dismisses Jasper's Complaint without prejudice.

## STATEMENT OF FACTS

The following facts are taken from Jasper's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Jasper, an Indiana resident, purchased a container of Abbott's Similac Advance Early Shield Powder infant formula on Sept. 18, 2010 and began feeding the formula to her son. (Compl. ¶¶ 8, 10.) Roughly four days later, around Sept. 22, 2010, Abbott announced that it was recalling more than five million containers of formula because the product may have been

contaminated with beetles or beetle larvae. (Compl. ¶¶ 20, 22.) The container Jasper purchased was one of the 2,000-plus lot numbers recalled. (Compl. ¶ 22.) The Food and Drug Administration found that infants who ingested the formula contaminated with beetles or beetle larvae experienced gastrointestinal discomfort and temporary refusal to eat. (Compl. ¶ 2.) At the time of the recall, Jasper's son had eaten about half of the container of formula. (Compl. ¶ 10.) As a result of the contamination, Jasper and class members suffered "extreme mental anguish and pain and suffering." (Compl. ¶¶ 38, 46.) Jasper does not allege that her son suffered any physical injury.

Abbott's Sturgis, Michigan manufacturing facility has a history of beetle infestation. (Compl. ¶ 26.) In a Department of Health and Human Services ("DHHS") Inspection Report, DHHS found approximately 30 instances of beetles in the facility between 2007 and 2010. (Compl. ¶ 27.) In July 2010, Abbott received a complaint from a consumer who found insects in her Similac formula. (Compl. ¶ 29.) One month later, in August 2010, Abbott received another consumer complaint regarding a weevil found in the formula. (Compl. ¶ 30.)

Abbott marketed the Similac formula as one that "Moms can count on for trusted nutrition and formula that's right for their babies." (Compl. ¶ 17.) Abbott also advertised the formula with statements including:

- "When it comes to the science of nutrition, Similac stands apart."
- "More moms choose Similac. Why? Similac Advance has EarlyShield, and is designed to be more like breast milk and help support your baby's developing immune system. Only EarlyShield has our patented blend of immune-supporting nucleotides—plus prebiotics and carotenoids, nutrients naturally found in breast milk."

- "Nearly 100 years and 280 clinical studies have nourished our most advanced formulas. No wonder it's the #1 brand fed in hospitals—and the choice of more moms."

- "You can trust Similac Sensitive to provide a strong start for your baby's developing digestive system."

- "It's no wonder that a company with such a heritage of innovation was the company to bring moms Similac Advance. Whether they're formula feeding or supplementing their breast milk, they can be confident knowing that Similac Advance is designed to be more like breast milk and to help build a strong immune system."

(Compl. ¶ 19.) Jasper alleges that, based on these statements, she bought Similac Advance Early Shield Powder infant formula and fed it to her son. (Compl. ¶ 25.)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id.* at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then

determines if they plausibly give rise to an entitlement to relief. *Id.* A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

Claims alleging fraud must also satisfy Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "While [Rule 9(b)] does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The heightened pleading therefore requires a complaint alleging fraud to contain more substance to survive a motion to dismiss as compared to a Rule 12(b)(6) motion based on another cause of action. *See Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (stating that Rule 9(b) forces "the plaintiff to do more than the usual investigation before filing his complaint"); *Viacom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (explaining that "[t]he rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party").

## DISCUSSION

### I. Misrepresentation

Jasper alleges that Abbott intentionally and negligently misrepresented its product to consumers by marketing Similac infant formula as a healthy product while omitting information about the beetle infestation at its Sturgis facility.

4

A.   **Intentional Misrepresentation**

To succeed on an intentional misrepresentation claim, Jasper must show that: (1) Abbott made false statements of past or existing material facts; (2) Abbott made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) Abbott made the statements to induce Jasper to act upon them; (4) Jasper justifiably relied and acted upon the statements; and (5) Jasper suffered injury. *See Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009).

Rule 9's heightened pleading standard applies to claims of intentional misrepresentation. *See, e.g., Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041-42 (N.D. Ill. 2007) (distinguishing intentional misrepresentation from negligent misrepresentation and collecting cases). Here, Jasper has not pled reliance with the required specificity. Jasper describes several of Similac's advertisements and slogans but does not state when or where she viewed them or whether they were made after Abbott learned of beetles in its Sturgis facility. Jasper's inference that she bought Similac based on Abbott's advertisements fails to satisfy the heightened pleading standard. *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) (requiring plaintiffs to specify the time, place, and content of the alleged false representations and the method by which the misrepresentations were communicated).

i.   **Injury**

Jasper does not allege a physical injury and her allegations of emotional distress are insufficient. *See Dickerson,* 904 N.E.2d at 715; *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law."). Jasper does not allege that she purchased a defective container of Similac, merely that the Similac that she purchased was subject to a recall. Moreover, neither Jasper nor her son saw or

5

consumed a beetle or beetle parts. Nor does Jasper allege that she or her son showed any signs of eating a beetle, including gastrointestinal discomfort, diarrhea, or refusal to eat. In short, Jasper does not allege that her particular container of formula contained beetles or larvae or that she or her son suffered a physical injury as a result.

Jasper does allege that she suffered extreme mental anguish by feeding the later-recalled formula to her son. Indiana follows a modified direct impact rule, which allows for recovery for emotional trauma provided there is a "direct impact by the negligence of another." *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991). "For purposes of the modified rule, the direct impact sustained by the plaintiff must necessarily be a 'physical' one," rather than a purely psychological impact. *Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999) (finding a loud knock on the door insufficient to create a direct impact); *see also Atl. Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006) (finding the smell of cigarette smoke and the vibrating of an airplane to be speculative mental anguish and not sufficiently direct to satisfy the modified impact rule); *Gorman v. I&M Elec. Co.*, 641 N.E.2d 1288, 1291 (Ind. Ct. App. 1994) (witnessing the burning of a home in which no one was injured precludes recovery because "allowing [the plaintiff] to recover for her fear of an injury that did not occur, but might have happened had the situation been as she mistakenly believed, would effectively abolish the impact rule."); *but see Holloway v. Bob Evans Farms, Inc.*, 695 N.E.2d 991 (Ind. Ct. App. 1998) (finding that eating half a worm inadvertently cooked into a meal constitutes a direct physical impact under the modified impact rule).

Here, Jasper does not allege that she fed her child any beetle larvae and makes no allegations that she or her son experienced a direct physical impact. She does not claim that a beetle was found in her specific container of formula or that she or her son saw a beetle or

suffered any physical injury. *See Holloway*, 695 N.E.2d at 996 (noting that had plaintiff discovered the worm in her food before she began eating, she would not have been able to maintain a direct impact under the modified impact rule) (citation omitted). As such, Jasper's fear of feeding her child beetle parts does not satisfy the modified direct impact rule, and under Indiana law, she may not recover for intentional misrepresentation. *See id*. at 995 (noting that the plaintiff alleged damages other than emotional distress, including those based on visits to a doctor, prescribed medication, and absence from work due to an ensuing illness); *Gorman*, 641 N.E.2d at 1291 (finding plaintiff's emotional injury claims insufficient where "she did not witness any physical injury and, in fact, her son was not injured").

This finding is supported by the persuasive weight of authority in other circuits requiring "allegations of injury or damages in products liability cases." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627-28 (8th Cir. 1999) (collecting cases). To that end, where "a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies." *Id*. at 628. Jasper has failed to allege that the Similac that she purchased was defective. Her allegations that she feared that her Similac was defective are insufficient to state a damages claim. *See, e.g., O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503-04 (8th Cir. 2009) ("It is not enough to allege that a product line contains a defect or that a product is at risk of manifesting the defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect."). Therefore, Jasper cannot maintain an intentional misrepresentation claim.

**B.     Negligent Misrepresentation**

Indiana recognizes a limited tort of negligent misrepresentation as an exception to the "economic loss rule" that otherwise prevents recovery in tort for purely pecuniary harm. *See U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747-48 (Ind. 2010). Until

7

recently, Indiana courts only recognized the tort in the employment context. *See Trytko v. Hubbell, Inc.*, 28 F.3d 715, 720-21 (7th Cir. 1994).

To state a claim of negligent misrepresentation, Jasper must allege that Abbott, in the course of its business, supplied "false information for the guidance of others in their business transactions"; that others justifiably relied upon the information to their pecuniary loss; and that Abbott failed to exercise "reasonable care or competence in obtaining or communicating information." *U.S. Bank*, 929 N.E.2d at 747 (citation omitted).

In *U.S. Bank*, the Indiana Supreme Court extended the tort of negligent misrepresentation to the title insurance industry, finding that a land title corporation had a duty "to communicate the state of a title accurately when issuing its preliminary commitment." *Id*. at 749. As an initial matter, Jasper has not provided the Court with any Indiana precedent allowing a negligent misrepresentation claim to proceed against a manufacturer of consumer goods based on the manufacturer's advertisements to the public. *See Trytko*, 28 F.3d at 720 (noting that Indiana courts "recognized the tort of negligent misrepresentation in the limited context of an employer-employee relationship."). Moreover, Jasper's allegations do not demonstrate that Abbott misrepresented its product. Jasper's Complaint includes no marketing statements from Abbott that claim Similac is safe. Instead, Abbott's advertisements only refer to the nutritional value and nutrient blend of Similac. Jasper does not allege that a formula containing beetles or beetle larvae fails to contain a balanced blend of nutrients. (Compl. ¶¶ 18, 19.) Nor does Jasper contend that Similac was developed with fewer than 280 clinical studies. To the extent that Jasper claims that she was misled by Similac Sensitive's slogan—that it will provide a strong start for her baby's developing digestive system—that claim fails because Jasper does not allege that she purchased Similac Sensitive or that her son's digestive system was adversely affected by

8

his Similac. Indeed, Jasper's failure to allege how her Similac was defective—beyond being subject to a recall—weighs against a finding of negligent misrepresentation. Accordingly, Jasper cannot maintain a negligent misrepresentation claim because she fails to allege that any of Similac's marketing materials contained false statements or that she relied on these statements to her detriment.

Jasper has not adequately pled either intentional or negligent misrepresentation, and, as such, the Court dismisses Counts I and II.

## II. Indiana's Deceptive Consumer Sales Act

Jasper alleges in Count VI that Abbott violated the DCSA. Ind. Code §§ 24-5-0.5. She alleges that Abbott's marketing materials: a) indicated the formula had characteristics that it did not actually have; and b) declared a particular level of quality the formula did not meet. *Id.* at § 24-5-0.5-3(a)(1), (2).

Claims under the DCSA may be brought for an incurable deceptive act or once the consumer bringing the action "give[s] notice in writing to the supplier." *Id.* at § 24-5-0.5-5. Jasper does not allege that she gave written notice to Abbott about beetles in her formula, only that Abbott should have been put on notice when it received complaints several months before from other consumers. Constructive notice, however, is insufficient; the notice must come from the consumer bringing the action. *See Lehman v. Shroyer*, 721 N.E.2d 365, 369 (Ind. Ct. App. 1999); *McCormick Piano & Organ Co., Inc. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980) ("The clear intent of the [DCSA] is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. This clear purpose may be effectuated only by a literal application of the notice provisions.").

Without actual written notice to Abbott, Jasper may only recover against Abbott for an incurable deceptive act, which requires that she satisfy Rule 9(b)'s heightened pleading standard. Ind. Code § 24-5-0.5-2(8) (amended by Ind. Legis. Serv. 226-2011 (West)) (defining an incurable deceptive act as a "scheme, artifice, or device with intent to defraud or mislead"). As discussed above, Jasper does not satisfy the who, what, where, and when of the alleged fraud. *Ackerman*, 172 F.3d at 469. Specifically, Jasper does not allege when the marketing statements were made, where they were made, or if they were made after Abbott first learned of the contamination by the consumer complaints to the Food and Drug Administration.

Jasper failed to give notice to Abbott and failed to sufficiently plead key details in her Complaint with the required specificity under Rule 9(b). Jasper has not adequately alleged that Abbott violated the DCSA or that the Similac that she purchased did not have the characteristics and benefits that Abbott represented. Therefore, the Court dismisses Count VI.

### III. Breach of Warranty

In Counts III and IV, Jasper alleges breaches of express and implied warranties for selling formula with a lesser value and quality than advertised.

To recover for a breach involving a sale, "the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Ind. Code § 26-1-2-607(3); *see also Thompson Farms, Inc. v. Corno Feed Prods.*, 366 N.E.2d 3 (Ind. Ct. App. 1977). As discussed above, Jasper did not personally provide notice to Abbott regarding the problematic formula.

Jasper also fails to adequately allege that the Similac that she purchased lacked the benefits that Abbott advertised or that she subsequently failed to receive the benefit of the bargain. *See, e.g., O'Neil*, 574 F.3d at 504 ("because the [plaintiffs'] crib has not exhibited the

10

alleged defect, [plaintiffs] have necessarily received the benefit of their bargain."). Jasper's bargain with Abbott "did not contemplate the performance" of Similac purchased by other consumers and, as such, she cannot rely on their experiences to allege that the Similac that she purchased was also defective. *Id*.

"If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation." *Bridgestone*, 288 F.3d at 1017; *see, e.g., O'Neil*, 574 F.3d at 504 (finding that a suit "does not lend itself to contractual claims" where the defendants "have not failed to deliver what was promised."). Jasper has not alleged that the Similac that she purchased contained beetle parts or that it caused any physical injury to her or her son. Nor has Jasper demonstrated that she relied on Abbott's representations when purchasing Similac. While other consumers may have purchased Similac formula that contained beetle parts that injured them, Jasper may not rely on their experiences to claim that she did not receive the benefit of the bargain. *See, e.g., O'Neil*, 574 F.3d at 505 ("The [plaintiffs'] crib performs just as it was intended, and thus there is no injury and no basis for relief."). Jasper has not adequately alleged a breach of warranty because she has not adequately alleged that her Similac was defective. Accordingly, the Court dismisses Counts III and IV.

## IV.  Unjust enrichment

Jasper claims Abbott received unjust enrichment for its sale of the contaminated Similac formula. To prevail on a claim of unjust enrichment, Jasper "must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009). "Consequently, a contract precludes application of quantum meruit because (1) a contract provides a remedy at law, and (2) as a remnant of

chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law." *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004). Here, Jasper's unjust enrichment claim fails because she has not adequately alleged that Abbott unjustly benefitted from her Similac purchase or that the Similac that she purchased was defective. Jasper also retains adequate remedies at law—including Abbott's offer to refund consumers—to compensate her for her recalled Similac. As such, the Court dismisses Jasper's unjust enrichment claim in Count V.

## CONCLUSION AND ORDER

For the reasons stated, the Court grants Abbott Laboratories' Motion to Dismiss and dismisses Jasper's Complaint without prejudice.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 8, 2011